**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

JONATHAN AFFLECK,

                 Plaintiff,

      v.

THE HARVARD CRIMSON, INC.,

                 Defendant.

Case No. 1:24-cv-10802-AK

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE HARVARD
CRIMSON, INC.'S MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

    I.     Legal Standard ...................................................................................................... 3

    II.    Section 230 Bars Plaintiff's Claims ................................................................... 4

    III.   The First Amendment Bars Plaintiff's Claims ................................................... 7

    IV.   Affleck Fails to Allege Essential Elements of His Claim ..................................... 9

         A.    Affleck Fails to State Viable Claims Under 42 U.S.C. § 1983 .................. 9

         B.    Affleck Fails to State a Viable Claim for Common Carriage
             Discrimination ........................................................................................ 12

         C.    Affleck Fails to State a Viable Claim for Public Accommodation
             Discrimination ........................................................................................ 13

CONCLUSION ...................................................................................................................... 14

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adickes v. S. H. Kress & Co.*,
   398 U.S. 144 (1970)..................................................................................12

*Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto*,
   522 F.3d 1 (1st Cir. 2008)..........................................................................10

*Alexis v. McDonald's Rests. of Mass., Inc.*,
   67 F.3d 341 (1st Cir. 1995).......................................................................10

*Am. Tel. & Tel. Co. v. IMR Cap. Corp.*,
   888 F. Supp. 221 (D. Mass. 1995).............................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................3, 4

*Ayyadurai v. Floor64, Inc.*,
   270 F. Supp. 3d 343 (D. Mass. 2017).........................................................5

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .................................................................4, 5

*Barr v. Camelot Forest Conservation Ass'n, Inc.*,
   153 F. App'x 860 (3d Cir. 2005) .................................................................9

*Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*,
   84 F.3d 487 (1st Cir. 1996).......................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................3

*Blum v. Yaretsky*,
   457 U.S. 991 (1982)..................................................................................11

*Brunette v. Humane Soc'y of Ventura Cnty.*,
   294 F.3d 1205 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Aug. 23, 2002)
   .................................................................................................................10

*Bursey v. United States*,
   466 F.2d 1059 (9th Cir. 1972) .....................................................................7

*Collins v. Purdue Univ.*,
   703 F. Supp. 2d 862 (N.D. Ind. 2010) .........................................................5

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
    6 F.4th 1247 (11th Cir. 2021) ....................................................................7

*DeBauche v. Trani*,
    191 F.3d 499 (4th Cir. 1999) ......................................................................9

*Doe v. Google LLC*,
    2021 WL 4864418 (N.D. Cal. 2021), *aff'd*, 2022 WL 17077497 (9th Cir. 2022)..................12

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ....................................................................5

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) ................................................6

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...............................................6, 11

*Guo v. Wang*,
    2024 WL 2274610 (D. Mass. May 20, 2024) .............................................4

*Heineke v. Santa Clara Univ.*,
    965 F.3d 1009 (9th Cir. 2020) ...............................................................9, 12

*Hudgens v. N.L.R.B.*,
    424 U.S. 507 (1976).....................................................................................9

*In re Jarvis*,
    53 F.3d 416 (1st Cir. 1995)........................................................................14

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016)................................................................4, 5, 13

*Jarvis v. Vill. Gun Shop*,
    53 F. Supp. 3d 426 (D. Mass. 2014), *aff'd sub nom. Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1
    (1st Cir. 2015) ............................................................................................11

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) .......................................................7

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007).............................................................7

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. May 20, 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021)........6

*Lewis v. Google LLC*,
    851 F. App'x 723 (9th Cir. 2021) .............................................................13

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)................................................................................................9, 10

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019)................................................................................................9, 10

*Martillo v. Twitter Inc.*,
    2021 WL 8999587 (D. Mass. Oct. 15, 2021), *aff'd*, 2022 WL 18862030 (1st Cir. Oct. 4,
    2022), *cert. denied*, 143 S. Ct. 779 (2023)..............................................6, 7, 12, 13

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974)........................................................................................................7

*Monsarrat v. Newman*,
    28 F.4th 314 (1st Cir. 2022)..........................................................................................4

*Moody v. NetChoice, LLC*,
    No. 22-277, 2024 WL 3237685 (U.S. July 1, 2024).................................................7

*NetChoice, LLC v. Att'y Gen., Fla.*,
    34 F.4th 1196 (11th Cir. 2022) .................................................................................7, 8

*Noah v. AOL Time Warner, Inc.*,
    261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd*, 2004 WL 602711 (4th Cir. 2004)....................13

*O'Handley v. Padilla*,
    579 F. Supp. 3d 1163 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145
    (9th Cir. 2023), *pet. for cert. docketed*, *O'Handley v. Weber*, No. 22-1199 (U.S. June 8,
    2023)
    ...........................................................................................................1, 7, 8, 11

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023) ....................................................................................10

*Perlman v. Vox Media, Inc.*,
    2020 WL 3474143 (Del. Super. Ct. June 24, 2020), *aff'd*, 249 A.3d 375 (Del. 2021)..............5

*Plotkin v. Astorian*,
    2021 WL 864946 (D. Or. Mar. 8, 2021) ..................................................................10

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ...................................................................................9, 11

*Ramos v. White*,
    2020 WL 5240382 (Bankr. D. Mass. Sept. 2, 2020) ...............................................2

*Sikhs for Justice, Inc. v. Facebook*,
    697 F. App'x 526 (9th Cir. 2017) ...............................................................................7

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
 144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) ...................6

*United States Telecom Ass'n v. FCC*,
 825 F.3d 674 (D.C. Cir. 2016) ..............................................................................................12

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
 478 F.3d 413 (1st Cir. 2007) ...................................................................................................4

*Zeran v. Am. Online, Inc.*,
 129 F.3d 327 (4th Cir. 1997) ...................................................................................................4

**Statutes**

42 U.S.C. § 1983.................................................................................................3, 9, 10, 12

42 U.S.C. § 2000a...........................................................................................................6, 13

47 U.S.C. § 230................................................................................................... *passim*

Massachusetts' Common Carrier Law, M.G.L. Chapter 159, § 1 ......................................6, 12, 13

**Rules**

Fed. R. Evid. 201(b).................................................................................................................2

**Constitutional Provisions**

Massachusetts Constitution.................................................................................................3, 9

United States Constitution, First Amendment .................................................................... *passim*

## PRELIMINARY STATEMENT

Pro Se Plaintiff Jonathan Affleck ("Plaintiff" or "Affleck") seeks to penalize The Harvard Crimson, Inc. ("Defendant" or the "Crimson") for moderating third-party posts in the comment section on its website—conduct that is essential to any website's operations and, indeed, something that Congress specifically sought to encourage when it adopted Section 230 of the Communications Decency Act.  In his Complaint, Affleck specifically challenges the Crimson's decision to remove comments that Affleck posted in the comment section on the Crimson's website and the Crimson's decision to suspend his ability to post comments on its website moving forward.  Affleck asserts that the Crimson's conduct—which amounts to basic content moderation—is a violation of his federal and state constitutional rights and constitutes common carriage and public accommodation discrimination.

Affleck's claims, however, fail as a matter of law for three independent reasons.  *First*, Section 230 of the Communications Decency Act, 47 U.S.C. § 230, bars all of Plaintiff's claims because they seek to hold the Crimson liable for failing to publish content authored by third parties. *Second*, Plaintiff's claims are barred by the First Amendment, as courts have routinely recognized a website's decisions to moderate content are constitutionally protected.  *See, e.g.*, *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–87 (N.D. Cal. 2022) (holding that a website's "decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, . . . are protected by the First Amendment"), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), *pet. for cert. docketed*, *O'Handley v. Weber*, No. 22-1199 (U.S. June 8, 2023).  *Third*, Affleck has failed to plead essential elements of his causes of action against the Crimson.  For each of these independent reasons, the Court should dismiss the claims against the Crimson with prejudice.

1

## FACTUAL BACKGROUND

The Crimson is a nonprofit corporation incorporated in the commonwealth of Massachusetts whose officers and directors are undergraduate students of Harvard College.  *See* Business Entity Summary, ID No. 042426396, Secretary of the Commonwealth of Massachusetts, Corporations Division, available at https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=y9l1BvWHVBrfH69RAGSPPTfYuWZ342GT7Ngr0EW3zaA-.[1]  The Crimson publishes a print newspaper Monday through Friday during the academic year that is distributed free of charge to Harvard University students, as well as its website thecrimson.com.  *See e.g.*, Compl. ¶ 10 (alleging that the Crimson "prints a daily newspaper").

Between February 7 and February 10, 2024, Affleck authored and posted 38 comments on the Crimson's website.  Compl. ¶¶ 17–18.  He posted this content in the comment section of three separate articles published by the Crimson.  *Id.*  These three articles reported on various controversies at Harvard University, including (i) the backlash surrounding a Harvard Kennedy School event featuring a polarizing Palestinian professor, (ii) a complaint filed against the university with the U.S. Department of Justice alleging that Harvard failed to protect students from anti-Palestinian, anti-Muslim, and anti-Arab harassment and intimidation, and (iii) the protests held by pro-Palestine student groups demanding that the university divest from Israel.  *Id*. ¶ 17.  Affleck—who does not allege that he is affiliated with Harvard University in any way (*see id*. ¶ 9)—took it upon himself to comment 38 separate times on these articles to "demonstrate to

---

[1] This Court can take judicial notice of facts "that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  This includes the Crimson's filings with the Corporations Division of the Secretary of the Commonwealth of Massachusetts.  *See e.g. Ramos v. White*, 2020 WL 5240382, at *2 n.6 (Bankr. D. Mass. Sept. 2, 2020) (taking judicial notice of a limited liability company's corporate filings in the Massachusetts Corporate Database).

2

vacuousness of various assertions about Palestinians and about the ongoing Gaza Holocaust." *Id.* ¶ 17. Affleck posted these comments under two names: Jonathan Affleck and Attallah Aflaq. *Id.* ¶ 18. The Crimson, however, removed these comments from its website because they were not deemed to be appropriate. *Id.* at 20. Additionally, to prevent Affleck from continuing to engage in this conduct, the Crimson suspended Affleck's ability to post comments on its website in the future. *Id.* Indeed, the Crimson has since removed its comment section in its entirety as a result of this incident.

Affleck now brings this suit and asserts four separate claims against the Crimson for engaging in basic content moderation. Affleck specifically alleges that the Crimson has violated his rights under the First Amendment and the Massachusetts Constitution, respectively, under 42 U.S.C. § 1983. *Id.* ¶¶ 22–27. He also asserts that the Crimson has violated his right to non-discriminatory common carriage. *Id.* ¶¶ 28–31. Finally, Affleck asserts that the Crimson's conduct amounts to public accommodation discrimination. *Id.* ¶¶ 32–34. Each of these claims— which are premised entirely on the Crimson's decision to remove Affleck's comments from its website and restrict his ability to post such comments in the future—fail as a matter of law.

## <u>ARGUMENT</u>

### I.   **Legal Standard**

To state a claim, Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requires Plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Although pro se complaints are entitled to a liberal reading of the allegations at issue, a pro se plaintiff "must still comply with the applicable procedural and substantive rules of law." *Guo v. Wang*, 2024 WL 2274610, at *1 (D. Mass. May 20, 2024).

## II.    Section 230 Bars Plaintiff's Claims

Enacted to bolster First Amendment protections for online intermediaries, § 230(c)(1) protects websites from claims that ultimately seek to hold them liable for publishing, or failing to block, a user's content. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009). Indeed, the very purpose of "Section 230," as it is known, "was to encourage service providers to self-regulate the dissemination of offensive material over their services." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). Thus, Section 230 "allows website operators to engage in blocking and screening of third-party content, free from liability for such good-faith efforts." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016). Because Plaintiff's claims are premised on the Crimson's "blocking and screening of third-party content," Plaintiff's claims all fail as a matter of law.

Specifically, Section 230 immunity applies if (1) the defendant provides an "interactive computer service" and (2) the plaintiff seeks to treat the defendant "as a publisher or speaker" (3) "of information provided by another information content provider." *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007) (quoting 47 U.S.C. § 230(c)(1)). Courts have held that these elements should be "broadly construed" in favor of immunity. *Monsarrat v. Newman*, 28 F.4th 314, 318 (1st Cir. 2022) (citing *Lycos*, 478 F.3d at 419). "When a plaintiff

cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019)

The three elements of Section 230(c)(1) immunity are satisfied here. *First*, courts have repeatedly held that comment sections, like the one on the Crimson website, are the "prototypical" example of an "interactive computer service" qualifying for immunity under Section 230. *See Dyroff*, 934 F.3d at 1097; *Ayyadurai v. Floor64, Inc*., 270 F. Supp. 3d 343, 368 (D. Mass. 2017) ("website operator" taking a " user-submitted comment and re-post[ing] it, without modifying the content of the comment" protected by Section 230); *Perlman v. Vox Media, Inc.*, 2020 WL 3474143, at *2 (Del. Super. Ct. June 24, 2020) (applying Section 230 to the comment section of Defendant Vox Media, Inc.'s news website "The Verge"), *aff'd*, 249 A.3d 375 (Del. 2021); *see also Collins v. Purdue Univ.*, 703 F. Supp. 2d 862, 878–79 (N.D. Ind. 2010) (holding that a university newspaper's website is an interactive computer service).

As to the remaining two elements, Affleck's claims seek to hold the Crimson liable as the "publisher or speaker" of "information provided by another information content provider." *Dyroff*, 934 F.3d at 1097 (citation and internal quotation marks omitted). All four claims are premised specifically on "removing Mr. Affleck's content," "decreasing visibility of the content," "refus[ing] to allow Mr. Affleck to convey unpublished literary property," or "refus[ing] to accept a message from Mr. Affleck." Compl. ¶¶ 23, 26, 31, 33. As an initial matter, removing or restricting content falls within a publisher's traditional functions. *Backpage.com, LLC*, 817 F.3d 12, 21 ("Features such as these, which reflect choices about what content can appear on the website and in what form, are editorial choices that fall within the purview of traditional publisher functions."); *Barnes*, 570 F.3d at 1102 (such functions include "deciding whether to publish, withdraw, postpone or alter content") (citation and internal quotation marks omitted); *see also*

*Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019) ("[D]efendant's decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct."). Accordingly, found § 230(c)(1) bars claims based on a website's alleged removal of third-party content. *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119–20 (N.D. Cal. 2020) (Section 230(c)(1) barred Unruh Act claim because it was "based on Facebook's decision not to publish FAN's content"); see *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 955 (N.D. Cal. May 20, 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (Section 230 barred claim based on YouTube's alleged demonetization of plaintiff's videos containing political and anti-feminist content); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) (dismissing with prejudice Unruh Act claims because "Plaintiff seeks to hold Defendant liable for Defendant's decision 'whether to publish' third-party content"), *aff'd*, 697 F. App'x 526 (9th Cir. 2017). Finally, there can be no dispute that the content at issue was provided by a third-party, as Affleck explicitly pleads that he posted the relevant content on the Crimson's website in his complaint. Compl. ¶¶ 17–20.

Thus, all three prongs of Section 230 are easily met, and Plaintiff's lawsuit must be dismissed. Indeed, the recent case of *Martillo v. Twitter Inc.* is directly on point. There, the court dismissed a pro se litigant's public accommodation discrimination claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, and common carrier discrimination claim under Massachusetts' Common Carrier Law, M.G.L. ch. 159, § 1 asserted against six social media companies for removing his posts on their platforms and deactivating his accounts. 2021 WL 8999587, at *1–2 (D. Mass. Oct. 15, 2021), *aff'd*, 2022 WL 18862030 (1st Cir. Oct. 4, 2022), *cert. denied*, 143 S. Ct. 779 (2023). The court held that "[t]he defendants' alleged blocking of content posted by Martillo and disabling of his account are editorial decisions protected by the CDA." *Id.*

at *2 (citing *Sikhs for Justice, Inc. v. Facebook*, 697 F. App'x 526, 526 (9th Cir. 2017); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007)).  In the *Martillo* case, the plaintiff was engaged in essentially the same conduct and asserted the nearly identical claims as plaintiff does here.  This Court should likewise dismiss Plaintiff's claims with prejudice because they are barred by Section 230.

### III.    The First Amendment Bars Plaintiff's Claims

While Affleck is under the mistaken belief that he may assert his claims based on the First Amendment, the opposite is actually true.  Setting aside Section 230, the First Amendment provides separate protection for the Crimson's conduct here.  Affleck seems to think all citizens have an unfettered right to comment on other entities' websites, but he is entirely incorrect.

The First Amendment protects the decisions of a publisher, such as the Crimson, to select, arrange, and promote (or remove) third-party content.  *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974); *see also Moody v. NetChoice, LLC*, No. 22-277, 2024 WL 3237685, at *11 (U.S. July 1, 2024) ("[T]he First Amendment offers protection when an entity engaging in expressive activity, including compiling and curating others' speech, is directed to accommodate messages it would prefer to exclude."); *Bursey v. United States*, 466 F.2d 1059, 1087 (9th Cir. 1972) (First Amendment protects "decisions reflect[ing] editorial judgment" including "decisions about what should be published.").  These protections apply with equal force to online speech and content moderation.  *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1213 (11th Cir. 2022).  Accordingly, decisions about "what content to include, exclude, moderate, filter, label, restrict, or promote" are fully "protected by the First Amendment."  *O'Handley*, 579 F. Supp. 3d at 1186–87 (collecting cases); *see also La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991-92 (S.D. Tex. 2017) (same); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1255–56

(11th Cir. 2021) (affirming dismissal of civil rights claim because plaintiff's "proposed interpretation of Title II would infringe on Amazon's First Amendment right" and "would instead 'modify the content of [Amazon's] expression'—and thus modify Amazon's 'speech itself'—by forcing it to donate to an organization it does not wish to promote"). This kind of editorial decision-making is quintessential First Amendment speech, since a publisher's decision to host or not host content on its website "says something about what that [website] represents." *O'Handley*, 579 F. Supp. 3d at 1188.

Affleck's claims are entirely predicated on the Crimson's removal of Affleck's 38 posts in the comment section of the Crimson's website, as well as the Crimson's decision to suspend Affleck's ability to post comments on its website in the future. Compl. ¶¶ 17–21. In short, the conduct Affleck complains of is basic content moderation. Accordingly, the First Amendment bars his claims. *See NetChoice*, 34 F.4th at 1210 ("The Supreme Court has repeatedly held that a private entity's choices about whether, to what extent, and in what manner it will disseminate speech—even speech created by others—constitute 'editorial judgments' protected by the First Amendment."); *see also O'Handley*, 579 F. Supp. 3d at 1186–87 (dismissing plaintiff's statutory claims as barred by the First Amendment because social media platform's "First Amendment rights … would be jeopardized by a Court order telling [said platform] what content-moderation policies to adopt and how to enforce those policies"). For this reason alone, Affleck's claims fail as a matter of law, as the Crimson's decisions to moderate content on its website is constitutionally protected activity.

### IV.    Affleck Fails to Allege Essential Elements of His Claim

Even if Affleck's claims were permissible under the First Amendment and Section 230—which they are not—Affleck has failed to allege essential elements of each of his claims. These defects independently warrant dismissal of the Complaint with prejudice.

### A.  Affleck Fails to State Viable Claims Under 42 U.S.C. § 1983

The Court should dismiss Plaintiff's claims under 42 U.S.C. § 1983—which allege Defendant violated his rights under the First Amendment and Massachusetts Constitution by removing his content and disabling his ability to post comments thereby "abridge[ing his] speech" (Compl. ¶¶ 22–24, 25–27)—because the Crimson is a private entity, not a state actor.

The Free Speech Clause of the First Amendment "prohibits only governmental abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) (emphasis omitted); *see also Prager Univ. v. Google LLC*, 951 F.3d 991, 996 (9th Cir. 2020) ("First Amendment prohibits the government—not a private party—from abridging speech."); *DeBauche v. Trani*, 191 F.3d 499, 510 (4th Cir. 1999) ("[T]he constitutional protections of free speech and equal protection apply only against governmental action, and not against private action . . . ."); *Barr v. Camelot Forest Conservation Ass'n, Inc.*, 153 F. App'x 860, 862 (3d Cir. 2005) ("The First Amendment prohibits governmental, not private, infringement of free speech.") (citing *Hudgens v. N.L.R.B.,* 424 U.S. 507, 513 (1976)).

There is a strong "presumption . . . that private conduct does not constitute [state] action." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020) (citation and internal quotation marks omitted). Thus, the First Amendment is not implicated unless there is a sufficient factual predicate establishing that the defendant has acted as the state. To assess this, courts apply the two-step framework developed in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). The first step asks whether the alleged constitutional violation was caused "by the exercise of some right or

9

privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible." *Alexis v. McDonald's Rests. of Mass., Inc.*, 67 F.3d 341, 351 (1st Cir. 1995). The second step asks whether "the party charged with the deprivation is a person who may fairly be said to be a state actor." *Id.* Plaintiff is required to satisfy both of these factors. *Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*, 84 F.3d 487, 491 (1st Cir. 1996).

As to the first *Lugar* step, Plaintiff has not, and cannot, allege that the Crimson's content moderation decisions derive from a "right or privilege created by the State." *O'Handley v. Weber*, 62 F.4th 1145, 1156 (9th Cir. 2023). Plaintiff's failure to meet this initial requirement dooms his claim under 42 U.S.C. § 1983.

But even setting this first step aside, Plaintiff's claims also fail the second *Lugar* step because the Crimson is not a state actor under any of the three relevant tests: (1) the public function test; (2) the joint action/nexus test; or (3) the state compulsion test. *Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto*, 522 F.3d 1, 4 (1st Cir. 2008).

***Public Function Test.*** To satisfy the public function test, the relevant function performed by the private-party defendant must have been "traditionally the exclusive prerogative of the state." *Id.* "Newsgathering is the quintessential private activity, jealously guarded from impermissible government influence." *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1214 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Aug. 23, 2002) (holding that a newspaper "was not liable as a state actor" under any of the plaintiff's state action theories; *see also Halleck*, 587 U.S. at 802 (holding that a private nonprofit corporation that contracted with the City of New York to operate public cable channels was not a state actor despite being "heavily regulate[d]"); *Plotkin v. Astorian*, 2021 WL 864946, at *3 (D. Or. Mar. 8, 2021) ("Like the public

access television channel in Halleck, here a newspaper does not perform a traditional or exclusive government function.")  Thus, the Crimson is "a private forum, not a public forum subject to judicial scrutiny under the First Amendment."  *Prager Univ.*, 951 F.3d  at 995 (affirming dismissal of § 1983 claim against YouTube based on its content curation).

     ***Joint Action/Nexus Test.***  This test asks "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  *Jarvis v. Vill. Gun Shop*, 53 F. Supp. 3d 426, 432 (D. Mass. 2014), *aff'd sub nom. Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1 (1st Cir. 2015).  It requires "alleg[ing] that the state was involved with the activity that caused the injury giving rise to the action," identifying "specific facts establishing the existence of an agreement or a meeting of the minds between [the private actor] and the government."  *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1125–26 (N.D. Cal. 2020) (citation and internal quotation marks omitted) (rejecting claim based on "conclusory allegation that Facebook's work with the U.S. government concerning Russian interference in U.S. elections [was] a 'conspiracy to deny [plaintiff] its free speech rights'") (internal quotation marks omitted).  Affleck fails to allege any facts to suggest that the state had any involvement in the Crimson's decision to remove his posts on its website or to suspend his ability to post future comments.

     ***Government Nexus and State Compulsion Tests***.  The government nexus test asks if officials have "exercised coercive power or . . . provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).  This happens, for example, "when government officials threaten adverse action to coerce a private party into performing a particular act."  *O'Handley*, 62 F.4th at 1157–58. Similarly, the "state compulsion" test asks whether "the State, by its law, has compelled

11

the act." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170 (1970). But Affleck pleads no facts indicating the government forced or compelled the Crimson to take any particular action. *See Heineke*, 965 F.3d at 1014 (coercion requires "government commanded a particular result in, or otherwise participated in, [plaintiff's] specific case"); *see also Doe v. Google LLC*, 2021 WL 4864418, at *3 (N.D. Cal. 2021) (rejecting claim where no alleged coercive statement "mention[ed] Plaintiffs' names, their YouTube or Google accounts, their channels, or their videos), *aff'd*, 2022 WL 17077497 (9th Cir. 2022).

Ultimately, Affleck has not—and indeed cannot—plead that the Crimson is a state actor. For this reason, his § 1983 claims fail as a matter of law and should be dismissed with prejudice for this independent reason.

## B. Affleck Fails to State a Viable Claim for Common Carriage Discrimination

Affleck's claim for common carriage discrimination fails because—contrary to his assertions—the Crimson is not a common carrier. Specifically, the Massachusetts common carrier law that Affleck cites to in his pleadings (Compl. ¶¶ 28–31) provides that "[e]very common carrier of merchandise or other property" "shall not discriminate against any particular person or subject him to any undue or unreasonable prejudice or disadvantage." M.G.L. ch. 159, § 1. Just as the *Martillo* court found that the website Twitter was not a common carrier, this Court should likewise hold that the Crimson is "not [a] common carrier[] of 'merchandise or other property' for purposes of the 1869 law" based on the plain language of the statute. *Martillo*, 2021 WL 8999587, at *2 (citing *Am. Tel. & Tel. Co. v. IMR Cap. Corp.*, 888 F. Supp. 221 (D. Mass. 1995)). The Crimson— a student newspaper—cannot be properly characterized as a common carrier under federal law. Indeed, federal courts have routinely made the distinction between newspapers and common carriers. As articulated by the D.C. Circuit in *United States Telecom Ass'n v. FCC*:

> To be sure, in certain situations, entities that serve as conduits for speech produced by others receive First Amendment protection. In those circumstances, however, the entities are not engaged in indiscriminate, neutral transmission of any and all users' speech, as is characteristic of common carriage. For instance, both newspapers and cable television companies use a portion of their available space to reprint (or retransmit) the communications of others, while at the same time providing some original content.

825 F.3d 674, 742 (D.C. Cir. 2016) (citation and internal quotation marks omitted).  Because the Crimson is a newspaper and not a common carrier, Affleck cannot state a viable cause of action for common carrier discrimination.  His claim should be dismissed for this reason alone.

### C.  Affleck Fails to State a Viable Claim for Public Accommodation Discrimination

Affleck's final cause of action (Compl. ¶¶ 32–34) fails because the Crimson's website is not a public accommodation.  As articulated by the court in *Martillo*, under 42 U.S.C. § 2000a, the statutory definition of public accommodation "enumerates only actual physical establishments and structures (e.g., hotels, restaurants, movie theaters, stadiums) and establishments 'physically located' within the aforesaid."  2021 WL 8999587, at *1.  Accordingly, the "definition of a 'public accommodation' cannot be interpreted to include a virtual meeting place."  *Id.* (citing *Lewis v. Google LLC*, 851 F. App'x 723, 724 (9th Cir. 2021) (holding that YouTube websites are not a "place of public accommodation" within the meaning of 42 U.S.C. § 2000a); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 541–42 (E.D. Va. 2003) (holding that internet chat room was not a "public accommodation" within the meaning of 42 U.S.C. § 2000a(b) because places of "'public accommodation' are limited to actual physical places and structures, and thus cannot include chat rooms, which are not actual physical facilities but instead are virtual forums for communication"), *aff'd*, 2004 WL 602711 (4th Cir. 2004) (per curiam). The same statutory interpretation should be applied to Massachusetts' law, M.G.L. c. 272, § 92A, which also limits its definition of public accommodation to physical establishments.  *See also Backpage.com, LLC*,

817 F.3d at 23 (reiterating "the uncontroversial premise that, where feasible, 'a statute should be construed in a way that conforms to the plain meaning of its text'") (quoting *In re Jarvis*, 53 F.3d 416, 419 (1st Cir. 1995)).   The Crimson's website, therefore, does not qualify as a public accommodation.   Affleck's public accommodation discrimination claim fails as a matter of law for this independent reason.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss the Complaint in its entirety with prejudice and for any such other relief as this Court deems just and proper.

Dated:  July 8, 2024

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

*/s/Rachel F. Strom*
Rachel F. Strom (BBO #666319)
Alexandra M. Settelmayer (*pro hac vice* forthcoming)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
rachelstrom@dwt.com
alexandrasettelmayer@dwt.com

*Attorneys for Defendant The Harvard Crimson, Inc.*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I hereby certify that on July 2, 2024 Alexandra M. Settelmayer, counsel for Defendant, conferred with Plaintiff, in a good faith attempt to narrow the issues in dispute.

Dated:  July 8, 2024

$\qquad$ /s/ *Rachel F. Strom*
Rachel F. Strom

## CERTIFICATE OF SERVICE

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

Dated:  July 8, 2024

/s/ *Rachel F. Strom*
Rachel F. Strom