UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 1:24-cv-10802-AK

Jonathan Affleck
2816 MLK JR Way
Berkeley, CA 94703
Jonathan.Affleck@protonmail.com
(617) 276-5788

Jonathan Affleck

    Plaintiff

        v.    ORAL ARGUMENT REQUESTED

The Harvard Crimson
Inc (Harvard Crimson)

    Defendant

## PLAINTIFF AFFLECK'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND HIS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12 (c)

### Preamble

Plaintiff Jonathan Affleck ("Plaintiff" or Affleck)

- opposes the motion of Defendant The Harvard Crimson, Inc. (the "Crimson" or "Defendant") to dismiss and

- moves for judgment to grant him favor, compensation and curative relief on the basis of the pleadings pursuant to Fed. R. Civ. P. 12 (c).

As grounds for his motion the Plaintiff submits the accompanying Memorandum of Law and further states the following to support his Opposition and his Motion.

### Fundamental Errors of the Crimson

In its motion to dismiss, the Crimson makes fundamental errors.

1. By claiming that it is shielded by 47 U.S. Code § 230 the Crimson asserts without evidence that it is not a common carrier and that it only provides a service that meets the definition of interactive computer service.

2. The Crimson cannot conclusorily claim that a specific offered service is not communications common carriage. A Massachusetts judge rules as a matter of law on the basis of the facts

1

whether a specific service is common carriage. After the Massachusetts judge rules that the service is common carriage, 47 U.S. Code § 153 defines whether the specific service is federal communications common carriage (Compl. ¶ 13 footnote 2).

3. The Crimson does not provide a service that meets the criteria for interactive computer service because the Crimson does not provide access to the Internet.

4. By implying that 47 U.S. Code §202 does not apply, the Crimson is again conclusorily asserting that it is not a communications common carrier of messages.

5. When a corporation like the Crimson offers communications common carriage to the public as the Crimson has offered with its comments section, the corporation accepts the implied common carriage contract of *assumpsit* with the public, of which Affleck is a member. By *assumpsit*, the Crimson waives any First Amendment right to refuse to transport of Affleck's content.

6. A corporation may offer a plurality of services. A service may be a service of communications common carriage of a message (*e.g.*, the Crimson's comment service). Another service may be interactive computer service, which the Crimson does not offer according to the definition of Interactive Computer Service in § 230. Yet another service could be neither (*e.g.*, the Crimson's newspaper service). A service may simultaneously combine interactive computer service with a service of communications common carriage of a message.

7. In the comments section of an article, the Crimson offered just one service: communications common carriage of a message.

## Opposition

The Crimson's Motion misstates the basis of Affleck's Complaint and ignores or distorts the law and legal principles, which apply to Affleck's Complaint.

## Causes as listed by the Crimson in Motion

1. *First cause:* the First Amendment of the US Constitution protects both the speech of the Crimson in the Crimson's news service and also Affleck's speech in the comments section of a *Crimson* article.

2. *Second cause:* Article LXXVI of Articles of Amendment of the Massachusetts Constitution[1] protects both the speech of the Crimson in the Crimson's news service and also Affleck's speech in the comments section of a *Crimson* article.

3. *Third cause:* Affleck asserts and can prove in a trial before the Court that the Crimson violated US and Massachusetts common carriage law by denying him communications common carriage of a message.

---

[1] Article XVI of Part the First was annulled

4. *Fourth cause*: Affleck asserts and can prove to the satisfaction of the Court that the Internet is a state-supported public establishment and public facility. Because the government supports the Internet as place of public accommodation and because the Crimson's common carriage service operations and activities take place within the Internet, the Crimson meets the definition of a place of public accommodation under 42 U.S. Code § 2000a.

The Crimson's Motion omitted the following cause.

The Complaint alleges (Compl. ¶¶ 11-12) that the two initial clauses of 47 U.S. Code § 230 declare the Internet to be a government-designated public forum. At least one decision of the Supreme Court supports this contention of Affleck's complaint. See *United States v. American Library Assn., Inc.*, 539 U.S. 194, 123 S. Ct. 2297 (2003). The judiciary determines whether the Internet is a government-designated public forum.

The Crimson waived its First Amendment rights within the government-designated public forum of the Internet. Not only was the Crimson's denial of communications common carriage to Affleck a contractual violation, but the Crimson went further and interfered with Affleck's exercise of his First Amendment rights in a government-designated public forum even though the Crimson had no excuse of exercising its own First Amendment rights with respect to Affleck's content because the Crimson had waived its First Amendment rights under *assumpsit*.

Affleck will prevail on all claims for numerous reasons.

Qualifications to Causes Above

1. *Qualification to first cause:* because as a matter of fact, a 2024 social medium platform including the Crimson does not conform to the definition of an Interactive Computer Service (ICS), § 230 does not apply to the Crimson (Compl. ¶ 13). Even if § 230 were to apply to the Crimson, the Crimson as a communications common carrier of messages would be legally obligated not to violate 47 U.S. Code § 202 because § 230 contains no clear statement that asserts that § 202 does not apply to an ICS. When § 202 applies to an ICS, then § 230 does not preclude application of M.G.L. ch. 159, §§ 1-2 to the ICS. Even if a corporation's main business does not provide common carriage, the business can also offer a common carriage service to the public as the Crimson does in its comments section. While the Crimson publishes a newspaper, with respect to comments the Crimson has held out the service of transport of messages to the public for a fee under standard terms, which are defined by the fundamental contractual principles of *assumpsit* that define the public duties and obligations, which common carriage law imposes. *Assumpsit* of common carriage prevents the Crimson from evading the common

carrier's duties and obligations to the user of the Crimson's common carriage service. Not only has a communications common carrier of messages made a binding contract with the public, but the communications common carrier both (a) has a duty to uphold all the First Amendment rights of a user of the common carriage service and also (b) has an obligation not to abridge these rights within within the government-designated public forum of the Internet (Compl. ¶¶ 11-12). A communications common carrier of messages has waived his rights and cannot assert rights with respect to the content that the Common Carrier transports.

2. *Qualification to second cause:* the Plaintiff's claims are not barred by the First Amendment, which wholly supports the Plaintiff's claims. Under *assumpsit* and the contractual duties and obligations of common carriage law, the Crimson renounced rights to make "decisions about what content to include, exclude, moderate, filter, label, restrict, or promote (Defendant's Motion to Dismiss ¶ 3)." O'Handley's filings were uniformed both (a) with respect to *assumpsit* contractual obligations of a communications common carrier of messages and also (b) with respect to the appropriate way to bring an end-user complaint against an interstate communications common carrier of messages. O'Handley's case is irrelevant to the instant litigation.[2]

3. *Qualification to third cause*: by the argument of the Second Qualification above, the Plaintiff's claims are not barred by Article LXXVI of Articles of Amendment of the Massachusetts Constitution. Article LXXVI wholly supports the Plaintiff's claims.

4. *Qualification to fourth cause:* the Crimson makes a straw man argument about state-actor doctrine. The Plaintiff's complaint explicitly states that although state-actor doctrine might apply to another social medium platform that is intrinsically and symbiotically entwined with a state government, the Plaintiff has no evidence of such entwinement (Compl.¶ 14 & footnote 6). Because the Crimson admits that it violates the Plaintiff's rights to free speech under the improper assumption of legal authority or under an apparent but non-existent legal right that § 230 is alleged to confer, 42 U.S. Code § 1983 applies to the violations to which the Crimson has subjected Affleck because the Crimson acted not under law, and instead acted only under color of law.

---

[2]  See *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), and *O'Handley v. Padilla*, 579 F. Supp. 3d 1163 (N.D. Cal. 2022), aff'd *sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), pet. for *cert.* docketed, *O'Handley v. Weber*, No. 22-1199 (U.S. June 8, 2023).

## Motion

In addition, the Defendant explicitly states the following in the Memorandum of Law in Support of Defendant The Harvard Crimson, Inc.'s Motion to Dismiss the Complaint.

> Affleck posted [his] comments under two names: Jonathan Affleck and Attallah Aflaq. *Id.* ¶ 18. The Crimson, however, removed these comments from its website because they were not deemed to be appropriate. *Id.* at 20. Additionally, to prevent Affleck from continuing to engage in this conduct, the Crimson suspended Affleck's ability to post comments on its website in the future. *Id.* Indeed, the Crimson has since removed its comment section in its entirety as a result of this incident.
>
> Affleck now brings this suit…

The Crimson misstated the timing of the act of removal. The Crimson removed its comment section not immediately after the incident described, but six weeks later, only after the Crimson received Affleck's complaint and the summons to appear before this Court. The Crimson has admitted every fact of the Plaintiff's complaint and seems to be acting to limit either legal exposure or liability for violation of Massachusetts and federal common carriage law. A motion on judgment in favor the Plaintiff seems appropriate at this point in the litigation.

## Conclusion

WHEREFORE, for the foregoing reasons, and for the reasons further stated in the accompanying Memorandum of Law, the Plaintiff respectfully requests that this Court deny the Defendant's Motion to Dismiss. In addition, the Plaintiff respectfully motions that the Court issue a ruling in favor of the Plaintiff on every count if the facts and admissions of the pleadings are along with the Plaintiff's legal arguments sufficiently persuasive at this stage in the litigation.

Dated: _July 22, 2024_____

Respectfully submitted by:

*Jonathan Affleck*
Jonathan Affleck
2816 MLK JR Way
Berkeley, CA 94703
Jonathan.Affleck@protonmail.com
(617) 276-5788