## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Civil Action No.: 1:24-cv-10802-AK

Jonathan Affleck
2816 MLK JR Way
Berkeley, CA 94703
Jonathan.Affleck@protonmail.com
(617) 276-5788

Jonathan Affleck

    Plaintiff

           v.

The Harvard Crimson Inc
(Harvard Crimson)

    Defendant

ORAL ARGUMENT REQUESTED

Leave to file granted on August 16, 20214 [Dkt. 23]

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS OPPOSITION TO**

**DISMISSAL OF THE COMPLAINT  AND IN FURTHER SUPPORT OF HIS MOTION FOR**

**JUDGMENT IN HIS FAVOR ON THE PLEADINGS**

## Table of Contents

Tables of Authorities..................................................................................................................1
    Cases..........................................................................................................................................1
    Constitutional Provisions..........................................................................................................2
    Statutes......................................................................................................................................2
    Miscellaneous...........................................................................................................................2
Preliminary Statement...............................................................................................................3
Second........................................................................................................................................3
First.............................................................................................................................................4
    Counterargument......................................................................................................................6
    The Crimson's Self-Evidencing Violation..............................................................................10
Conclusion.................................................................................................................................10

## Tables of Authorities

*Cases*

1. *Am. Tel. & Tel. Co. v. IMR Cap. Corp.*, 888 F. Sup. 221 (D. Mass. 1995)    6
2. *Bürgin v. Forbes*, 293 Ky.,  456, 169 S. W.2d 321, 325    3

1

3.  *Humphries v. Various Federal USINS Employees*, 164 F.3d 936, 940 (5th Cir. 1999)   7
4.  *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016)   6
5.  *Keene Corp. v United States*, 508 U.S. 200 (1993)   3
6.  *Martillo v. Twitter Inc.*, 2021 WL 8999587 (D. Mass. Oct. 15, 2021), aff'd, 2022 WL   4, 5, 6, 8,
    18862030 (1st Cir. Oct. 4, 2022), cert. denied, 143 S. Ct. 779 (2023)   10
7.  *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)   7
8.  *Newblock v. Bowles*, 170 Okl. 487, 40 P.2d. 1097, 1100   6
9.  *Primrose v. Western Union Telegraph*, 154 U.S. 1, 14 S. Ct. 1098 (1894)   9
10. *In the Matter of Restoring Internet Freedom*, FCC 17-166, WC Docket No. 17-108,   10
    Adopted: December 14, 2017, Released: January 4, 2018
11. *Russello v. United States*, 464 US 16, 23, 78 LEd 2d 17, 104 S Ct 296 (1983)   3
12. *In the Matter of Safeguarding and Securing the Open Internet Restoring Internet*   10
    *Freedom*, FCC 24-52, WC Docket No. 23-320, WC Docket No. 17-108, Adopted:
    April 25, 2024, Released: May 7, 2024
13. *Oliver Dean Smith v. Substack,Inc.*, 24-cv-00727-AGT (Order Granting Defendant's   4
    Motion to Dismiss, and Granting in Part Defendant's Request for Judicial Notice),
    August 12, 2023
14. *William M. Vermilye V. Postal Telegraph Cable Company Of Massachusetts*, 205   7
    Mass. 598, March 4, 1910 - May 18, 1910, Suffolk County
15. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 211 L. Ed. 2D 316 (2021)   7

**Constitutional Provisions**

1.  U.S. Constitution Article I, Section 1   5
2.  U.S. Constitution Amendment I   5
3.  U.S. Constitution Amendment XIV   5

**Statutes**

1.  28 U.S. Code § 1915   6, 7
2.  47 U.S. Code § 202   7
3.  47 U.S. Code § 230   4, 10
4.  M.G.L. Chapter 159, § 1   6, 6, 9
5.  M.G.L. Chapter 159, § 2   6
6.  Prison Litigation Reform Act   7
7.  R.L.c. 122, § 9   6
8.  R.L.c. 122, § 10   6

## Miscellaneous

*Black's Law Dictionary*, Sixth Edition.   3
LinkedIn User Agreement https://www.linkedin.com/legal/user-agreement   3
Rules of Statutory Construction and Interpretation   3
https://www.supremecourt.gov/DocketPDF/18/18-
9575/102239/20190611092122150_00000055.pdf

## Preliminary Statement

The Crimson makes two points: First and Second, which are addressed in order of increasing complexity.

## Second

2024 Internet technology is not 1996 Internet technology. Internet technology has changed, but unlike the doctrine of common carriage,  47 U.S. Code § 230 is tied to a specific technology: the technology of a 1996 Interactive Computer Service (ICS), which in the 1990s was often called an Internet on-ramp.[1]

> **47 U.S. Code § 230 (f) Definitions (2) Interactive computer service**
> The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

The Supreme Court of the United States (SCOTUS) provides all lower courts with the following guidance on construction and interpretation of US laws including § 230.

> **Rules of Statutory Construction and Interpretation**
> 3. Every word within a statute is there for a purpose and should be given its due significance.
> *This fact only underscores our duty to refrain from reading a phrase into the statute when Congress has left it out. "'[W]here Congress includes particular language in one section of a statute but omits it in another ... , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Russello v United States, 464 US 16, 23, 78 LEd 2d 17, 104 S Ct 296 (1983)*
> *[Keene Corp. v United States, 508 U.S. 200 (1993)]*
>
> 11. Expressio Unius est Exclusio Alterius Rule The term "includes' is a term of limitation and not enlargement in most cases. Where it is used, it prescribes all of the things or classes of things to which the statute pertains. All other possible objects of the statute are, thereby excluded, by implication.
> *Expressio unius est exclusio alterius. A maxim of statutory construction interpretation meaning that the expression of one thing is the exclusion of another. Bürgin v. Forbes, 293 Ky., 456, 169 S. W.2d 321, 325; Newblock v. Bowles, 170 Okl. 487, 40 P.2d. 1097, 1100. Mention of one thing implies exclusion of another . When certain persons. or things are specified  in a law, contract, or will, an intention to exclude all others from its operation may be inferred. Under this maxim, if statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded.*
> *[Black's Law Dictionary, Sixth Edition, p. 581]*

If some entity runs a business that offers a 1996 Interactive Computer Service (ICS), 47 U.S. Code § 230 would apply along with all the associated caselaw. It is 2024, and a 2024 social

---

[1]   A social medium platform is not an Internet on-ramp, and an Internet Service Provider (ISP) has replaced the service of a dial-up Internet on-ramp. In the Internet of 2024, only an ISP seems to qualify to be an ICS of § 230.

medium platform like the comments section of the Crimson is not a 1996 ICS because it does not

"[include] specifically a service or system that provides access to the Internet." The determination of

the nature of the comments service of the Crimson is a matter of law but depends on examination of the

facts. Until a § 230 litigation proceeds past the pleading phase and facts can be provided on which a

judgment of law can be issued, the federal judiciary (a) is freezing jurisprudence in 1996 even though

the U.S. has moved on technologically, (b) is thwarting the will of Congress, (c) is legislating, and (d)

has replaced the U.S. Constitutional system with government by judiciary. No one should be surprised

that at least 30 states have passed or are developing legislation that is directed at a social medium

platform that abridges speech and abuses members of the public in the government-designated forum of

the Internet (*Opp. Motion*, p.3).[2] By preventing litigation from proceeding past the pleading phase to

the submission of evidence as a Court did in *Jane Doe No. 1 v. Backpage.com*, LLC, 817 F.3d 12, 18

(1st Cir. 2016), a Court in effect surreptitiously rewrites § 230 by deletion despite U.S. Constitution

Art. I Section 1 and despite the previously cited explicit guidance of SCOTUS. The Court in *Dean v.*

*Substack* below openly discloses modification of § 230 by deletion.

> An interactive computer service is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).

> *Oliver Dean Smith v. Substack,Inc.*, 24-cv-00727-AGT (Order Granting Defendant's Motion to Dismiss, and Granting in Part Defendant's Request for Judicial Notice, footnote 2), August 12, 2023.

When a Court decides to rewrites a U.S. statute, the Court puts the U.S. Constitutional system at

risk.

**<u>First</u>**

The Crimson suggests that (a) because Judge Stearns dismissed a previous complaint without

prejudice and (b) because Affleck did not file a new or amended complaint in *Martillo v. Twitter*,  this

---

[2]   The Crimson misrepresents the reasoning behind the enactment of § 230. The reasoning is technologically irrelevant today because practically every 2024 social medium platform would be found in court to provide only a service of communications common carriage of a message. The misrepresentation of the intent of Congress does tremendous harm to the U.S. legal system. See *Opp. Memo.* p. 8 *et seq.*

litigation, which has a different factual, jurisdictional, and statutory basis, has already been settled in favor of the Crimson in *Martillo v. Twitter*, (a) which the Crimson cited in its *Memorandum of Law in Support of the Harvard Crimson, Inc.'s Motion to Dismiss the Complaint*, (b) which Affleck openly cited in his *Memorandum of Law in Opposition to Defendant the Harvard Crimson, Inc.'s Motion and in Support of Plaintiff's Motion for Judgment in his Favor on the Pleadings*, (c) which never reached the stage of service, (d) which Affleck had the right to refile under either either his legal name Affleck or his professional name Martillo, and which clearly states the following.

> 4. Joachim Martillo (Joachim, Martillo) is a citizen of the Commonwealth of Massachusetts (USA) and Dorchester resident. He is also known as John Fallick, Jon Fallick, Jon Falic, or Jonathan Fallick and as Jonathan Affleck or Atallah Aflaq (יונתן פאליק , عطا الله عفلق).1 His address is 75 Bailey St. Ste 1L, Dorchester Center, MA 02124-3724. His phone number is 617-276-5788.

> *Martillo v. Twitter Inc.*, 2021 WL 8999587 (D. Mass. Oct. 15, 2021)

Not only does the Crimson want this Court to ignore (a) 180 years of caselaw that pertains to digital communications[3] common carriage of message, (b) sanctity of contract, (c) the U.S. Constitution Article I Section 1, (d) the U.S. Constitution Amendment I, and (e) the U.S. Constitution Amendment XIV, but the Crimson even wants this Court to redefine the Anglo-American common law <u>basis</u> of US jurisprudence so that the American public can be stripped of Constitutional and contract rights. <u>The Crimson wants this Court to consider dismissal without prejudice by a trial court before summons on the basis of judicial discretion to be somehow dispositive in a different litigation that Affleck has a right to file.</u>

---

[3]   Telegraph network technology (message switching) is a digital communications technology just like technology of the modern Internet technology (packet switching – a minor evolution of message switching). Telegraph service has been offered to a U.S. customer since May 1, 1844 when Samuel Morse initiated his service by means of the message, ""What hath God wrought?" – a tweet-like message. He sent this message from Washington, D.C. to Baltimore. Telegraph communications common carriage of a message hardly differs from Internet transport of a message. A modern user interface is improved. An historic 1960 Cadillac and a modern hybrid Toyota Prius are technologically different but must obey the same rules of the road (technologically-independent) even if they are under different legal regimes with respect to pollutants in exhaust emissions (technologically-dependent).

**Counterargument**

Judicial discretion neither needs to be based on merits nor does judicial discretion need to be based on the law as a ruling by a Court of Appeals should be. The Crimson is perhaps asking for the purest form of legislation by judiciary and for eradication of the doctrine of separation of powers.

Judge Stearns assumed as a matter of judicial discretion that a social medium platform was comparable to a common carrier of voice when the social medium platform transported a message.[5] Under this assumption Judge Stearns had discretion to dismiss the complaint without prejudice[6] pursuant to 28 U.S. Code § 1915[7](e)(2)(B)(iii) because the Judge concluded on an evidence-absent presumptive basis that Affleck sought "monetary relief against a defendant who is immune from such relief.[8]"

> Martillo also claims that the defendants violated a Massachusetts common carrier law which provides that "[e]very common carrier of merchandise or other property" "shall not discriminate against any particular person or subject him to any undue or unreasonable prejudice or disadvantage." M.G.L. ch. 159, § 1. The defendants are not common carriers of "merchandise or other property" for purposes of this 1869 law. See *Am. Tel. & Tel. Co. v. IMR Cap. Corp.*, 888 F. Supp. 221 (D. Mass. 1995) (noting year of enactment of M.G.L. ch. 159, § 1).
>
> *Martillo v. Twitter, et. al.*, 1:21-cv-11119-RGS, Order, October 15, 2021, p. 5.

The conclusion is not a binding holding of law. Judge Stearns was unable unequivocally to rule that the Crimson was not a common carrier of a message according to Massachusetts law. Such a ruling is an evidence-based legal determination that is made after initial pleadings but preliminary to a trial or during the trial. Because AT&T has provided communications common carriage both of voice and of a digital electronic message, Affleck had to question the choice of *Am. Tel. & Tel. Co. v. IMR Cap. Corp.* as a relevant precedent because pursuant to M.G.L. ch. 159, §§ 1-2 (formerly R. L. c. 122, §§ 9-10).

---

[5]   After service and summons, such a ruling on law could only be made after a factual analysis. Affleck never had an opportunity to present relevant facts.

[6]   28 U.S. Code § 1915 provides no "dismissal with prejudice."

[7]   Because the Covid lockdown ruined Affleck's patent agency, because bans from social medium platforms contributed to this financial ruin, and because litigation with a vindictive ex-wife took everything else that Affleck had, Affleck was eligible to file a complaint *in forma pauperis* against the six social medium platforms, which contributed most to Affleck's dire financial straits.

[8]   In *Affleck v. The Harvard Crimson Inc (Harvard Crimson)*, Affleck seeks injunctive relief as well as monetary relief.

Massachusetts has fined a communications common carrier of a message for approximately 150 years, *e.g.*, *William M. Vermilye v. Postal Telegraph Cable Company of Massachusetts*, 205 Mass. 598, March 4, 1910 - May 18, 1910, Suffolk County. In this particular case, the Massachusetts Court fined the defendant $50 for denial of communications common carriage of a message ("other property") and paid the fine to the plaintiff.[9]

While the penalties, to which a Massachusetts common carrier can be subject, are defined statutorily, a common carrier is defined in Massachusetts not by statute but by common carriage doctrine.

**M.G.L. Ch. 159, § 1 Duties; jurisdiction to enforce**
Chapter 159, Section 1. Every common carrier of merchandise or other property shall receive, transport and forward all property offered for such purposes by other such carriers as promptly, faithfully and impartially, at as low rates of charge, and in a manner and on terms and conditions as favorable to the carrier offering such property, as he on the same day and at the same place receives, forwards and transports, in the ordinary course of business, property of a like description offered by persons other than such carriers. Such carrier shall not discriminate against any particular person or subject him to any undue or unreasonable prejudice or disadvantage. The supreme judicial or superior court shall have jurisdiction in equity to enforce this section.
**M.G.L. Ch. 159, § 2 Penalty**
Chapter 159, Section 2. Every such carrier who wilfully neglects or refuses to comply with the preceding section shall forfeit not less than fifty nor more than five hundred dollars, to the person offering the property for transportation.

*Humphries v. Various Federal USINS Employees*, 164 F.3d 936, 940 (5th Cir. 1999) provides guidance with respect to appeal of a dismissal of a complaint according to 28 U.S.C. § 1915(e)(2)(B) (i). This guidance seems applicable to a dismissal of a complaint according to § 1915(e)(2)(B)(iii).

Because the district court dismissed this case as frivolous under 28 U.S.C. § 1915(d), now designated 28 U.S.C. § 1915(e)(2)(B)(i) by § 804 of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), we review the dismissal only for an abuse of discretion. See *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). In determining whether a district court abused its discretion, we consider factors such as "whether (1) the plaintiff is proceeding *pro se*, (2) the court inappropriately resolved genuine issues of disputed fact,[10] (3) the court applied erroneous legal conclusions,[11] (4) the court has provided a

---

[9]   In 1910 $50 was a lot of money. Affleck's complaint proposes much larger cumulative penalties for the violations of a 2024 social medium platform. These much larger cumulative penalties are consistent with the text of the Massachusetts common carriage and public accommodation statutes. SCOTUS seems to have no problem with such large penalties in a case that can be considered somehow related to civil rights. Large compensation is a civil complaint seems to substitute police enforcement of civil rights. See *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 211 L. Ed. 2D 316 (2021). A pro-life activist often considers the struggle against abortion to be a civil rights issue.

statement of reasons which facilitates 'intelligent appellate review,' and (5) any factual frivolousness could have been remedied through a more specific pleading." *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992).

Following this guidance, Affleck appealed Judge Stearns's order in *Martillo v. Twitter*. The Court of Appeals upheld only the Judge's judicial discretion – nothing more. As far as Affleck can determine, a Court of Appeals will only find abuse of judicial discretion if the lower Court is obviously discriminating against a class of litigants or if there is evidence of corruption in the lower Court's decisions. Affleck should probably have submitted an amended complaint,[12] but he hoped that a Court of Appeals might be receptive to an argument of abuse of discretion if the appellant actually understood the technology, history, and law of digital communications from the introduction of the telegraph through the development of the modern Internet. In addition, Affleck also hoped to inspire a Constitutional scholar to file an amicus brief in a § 230-related litigation that was pending before SCOTUS. In this latter goal, Affleck was only partially successful because no legal scholar has fully addressed the implied contractual aspect (from *assumpsit*) of common law of common carriage. From the standpoint of free speech of an Internet user, the common law *assumpsit* of a social medium platform protects the rights of the user to free expression because the social medium platform has under *assumpsit* renounced its right of expressive action through the discriminatory refusal to carry the content of the user.  This *assumpsit* cannot be legislated because SCOTUS will almost inevitably hold such legislation to be an unconstitutional abridgment of speech. Yet, modification of the implied contract of a common law communications common carrier by a supplemental agreement or stipulation cannot succeed in restoring the social medium platform's renounced expressive rights as long as the

---

[10]  When a court dismisses a complaint before service and summons, the ligating parties will not have identified genuine issues of disputed fact because the defendant is not yet informed of the complaint and has not participated in the litigation, which has been filed.

[11]  Judge Stearns's conclusion followed from assumptions and was not based on fact that was established during the litigation.

[12]  Affleck was not proud of his original complaint, which was too technical and not on point from a legal standpoint. He was also busy in trying to repair his financial state. He has tried to provide more conciseness and legal clarity in the complaint for *Affleck v. The Harvard Crimson Inc (Harvard Crimson)*.

social medium platform provides communication common carriage of a message. As far back as *Primrose v. Western Union Telegraph*, 154 U.S. 1, 14 S. Ct. 1098 (1894), SCOTUS has consistently held that such an agreement or stipulation, which a communications common carrier of a message requires from a customer, must be reasonable and must not vitiate the fundamental nondiscrimination that common carriage doctrine requires of every common carrier.

With respect to an item that a common carrier transports, a user's content has been assumed to be other property of the user from the first days during the middle of the 19th century when a state (a) began to prosecute a telegraph company for discrimination in communications common carriage of a message or (b) began to enable a victim of discrimination in communications common carriage of a message to bring a civil complaint against a telegraph company. In the early years of telegraphy, the newspapers and their reporters were litigating on the basis of the refusal to transport unpublished literary property (an unpublished news report, *Opp. Memo* footnote 10),[13] but a social medium platform or a telegraph company either then or now might also refuse to transport a trade secret that could be considered an intangible asset or intangible intellectual property. The specific nature and specific ownership of "other property" are irrelevant to M.G.L. ch. 159, § 1, in which "other property" is a catchall phrase that is meant to include every form of current or of future property from the moment of the enactment of M.G.L. ch. 159, § 1 in 1869 when telephone technology did not yet exist.

Before presentation of evidence, a Massachusetts judge cannot determine as a matter of law whether an alleged communications common carrier of messages is in fact a "common carrier of merchandise or other property." Such determination is made specific to an individual service of a shipper (carrier or transporter) on a case-by-case basis. While the following passage from the LinkedIn

---

[13]   The concept of tangibility seems not consistently defined in law. The digitized signals of digital literary property are tangible in the sense of readability (tangibility) by means of a physical device while only a description of a trade secret is tangible.

User Agreement is not dispositive, the passage shows that Affleck is not alone in his understanding of a user's content, which belongs to a user (*i.e.*, is property of a user).

> **LinkedIn User Agreement**
> As between you and LinkedIn, you own the content and information that you submit or post to the Services, and you are only granting LinkedIn and our affiliates the following non-exclusive license: A worldwide, transferable and sublicensable right to use, copy, modify, distribute, publish and process, information and content that you provide through our Services and the services of others, without any further consent, notice and/or compensation to you or others. These rights are limited in the following ways...

### The Crimson's Self-Evidencing Violation

The Crimson exaggerates the dispositive value of *Martillo v. Twitter* because denial of communications common carriage of a message ("other property") is a self-evidencing violation that federal and Massachusetts law could and should punish harshly. If this violation is not punished harshly, a malefactor like the Crimson will contribute materially and significantly to tearing down the whole framework of American civil rights and public accommodation anti-discrimination law.

### <u>Conclusion</u>

The Crimson has not responded substantively to even one of Affleck's accusations but admits every count.  Not only does the Crimson depend in its pleadings on misrepresentation, but § 230 provides no shield against common carriage law even if § 230 applied to the Crimson's comment service. The FCC has multiple times held that a genuine ICS could be a telecommunications common carriage service and subject to common carriage law (*e.g.*, 47 U.S. Code § 202).[14] § 202 does not require a communications common carrier to be a telecommunications common carrier (see  Compl. ¶ 13 & footnotes).

This litigation should go forward.

---

[14]   See *In the Matter of Restoring Internet Freedom*, FCC 17-166, WC Docket No. 17-108, Adopted: December 14, 2017, Released: January 4, 2018 and *In the Matter of Safeguarding and Securing the Open Internet Restoring Internet Freedom*, FCC 24-52, WC Docket No. 23-320, WC Docket No. 17-108, Adopted: April 25, 2024, Released: May 7, 2024.

Dated: August 20, 2024                    Respectfully submitted by: _Jonathan Affleck_

                                          Jonathan Affleck
                                          2816 MLK JR Way
                                          Berkeley, CA 94703
                                          Jonathan.Affleck@protonmail.com
                                          (617) 276-5788

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

Dated: August 20, 2024

*Jonathan Affleck*

Jonathan Affleck