UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JONATHAN AFFLECK, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 24-CV-10802-AK |
| THE HARVARD CRIMSON INC (HARVARD CRIMSON), | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

**A. KELLEY, D.J.**

      Plaintiff Jonathan Affleck ("Affleck") brings this action against Defendant The Harvard Crimson, Inc. ("the Crimson"). According to the Complaint, the Crimson, which publishes the Monday through Friday newspaper, *The Harvard Crimson*, deleted Affleck's comments on three articles on the Crimson's website and then suspended Affleck's ability to post. Affleck claims that the Crimson's actions violated the First Amendment of the United States Constitution, Article XVI of the Massachusetts Constitution, and finally, federal and state laws related to common carriage discrimination and public accommodation discrimination.

      For the following reasons, the Crimson's Motion to Dismiss for Failure to State a Claim [Dkt. 11] is **GRANTED** and the action is **DISMISSED.**

**I.    BACKGROUND**

      According to the Complaint, from February 7 to February 10, 2024, Affleck commented, under two different names, 38 times across three articles on the Crimson's website. [Dkt. 1 at 5]. The three articles focused on Palestine and the Palestinian people. Some time on February 10,

1

the Crimson deleted Affleck's comments from the comment section of the articles and suspended Affleck's ability to author any additional posts. Subsequently, the Crimson removed its comment section from articles altogether. [Dkt. 12 at 9].

Affleck alleges that, in removing his comments and disabling his account, the Crimson violated his free speech rights guaranteed by the First Amendment of the U.S. Constitution. [Dkt. 1 at 6]. He made the same claim under Article XVI of the Massachusetts Constitution. Affleck made two additional claims under federal and state laws. The first argues that in deleting his messages and preventing future posts, the Crimson conducted common carriage discrimination, while the second claim alleges public accommodation discrimination.

In its Motion to Dismiss, the Crimson offers multiple defenses. [Dkt. 11]. The Crimson asserts an affirmative defense that Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, bars all of Affleck's claims. The Crimson also argues that should this Court find Section 230 inapplicable, the First Amendment actually operates to *protect* the Crimson's actions in selecting, arranging, promoting, or removing third-party content. Finally, the Crimson argues that Affleck fails to allege the essential elements in any of his claims.

As laid out in both the Crimson's initial Motion to Dismiss and its subsequent Reply, this is not the first time Affleck has made nearly identical claims. [Dkts. 12; 18]. More specifically, it is not the first time Affleck made nearly identical claims against the Crimson. Martillo v. Twitter Inc., No. 21-CV-11119-RGS, 2021 WL 8999587 (D. Mass. Oct. 15, 2021), aff'd, 2022 WL 18862030 (1st Cir. Oct. 4, 2022), cert. denied, 143 S. Ct. 779 (2023). Although filed under different names, both parties acknowledge that Plaintiffs Joachim Martillo and Jonathan Affleck are the same person. [Dkt. 18] (writing in the Crimson's reply that "Affleck's reason for trying to ignore Martillo probably stems from the fact that he is, in fact, plaintiff Joachim Martillo.");

[Dkt. 24] (writing in Affleck's sur-reply that "Affleck ha[s] the right to refile under either [] his legal name Affleck or his professional name Martillo[.]").[1]  In the earlier case, "Martillo [brought the] action against six private companies that operate social media platforms . . . . Martillo represent[ed] that each defendant disabled or suspended his account on their respective platforms because he posted content that each defendant deemed to be anti-Zionist."  Martillo, 2021 WL 8999587, at *1.  Among the six private companies, Martillo/Affleck sued the Crimson. In that case, the court conducted the analysis regarding Martillo/Affleck's common carriage and public accommodation discrimination claims, denying both because the companies are "not common carriers of 'merchandise or other property'" and are "not places of 'public accommodation,'" respectively, but the analysis did not end there.  Id. at *1, *2.  The court continued, "even if Martillo had stated a claim under [public accommodation law] or the state common carrier law, the defendants would be immune from such claims under the Communications Decency Act[], 47 U.S.C. § 230."  Id. at *2.  Nonetheless, Martillo/Affleck makes similar claims against the Crimson here, which this Court must address.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Similarly, and important to the matter at hand, courts have found that although preemption under Section 230 of the CDA is an affirmative

---

[1] The Court warns Plaintiff Affleck that the use of fictitious names is strongly disfavored and should only be used when given leave by the court.  Federal Rule of Civil Procedure 10(a) provides that "[t]he title of the complaint must name all the parties" and Federal Rule of Civil Procedure 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest."  Although the use of pseudonyms may be allowed in "exceptional cases," Doe v. Mass. Inst. of Tech., 46 F.4th 61, 69-73 (1st Cir. 2022), there is a "strong presumption against the use of pseudonyms in civil litigation."  Does 1-3 v. Mills, 39 F.4th 20, 25 (1st Cir. 2022).

defense, "it can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint." Duffer v. Nextdoor, Inc., 701 F. Supp. 3d 86, 88 (D. Mass. 2023) (quoting Nat'l Ass'n of the Deaf v. Harvard Univ., 377 F. Supp. 3d 49, 68 (D. Mass. 2019)); see also Force v. Facebook, 934 F.3d 53, 63 n.15 (2d Cir. 2019) (finding that applying Section 230 at the pleadings stage was not premature).

Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. 544 at 559).

Complaints brought by pro se litigants, as is the case with this action, are subjected to a lesser scrutiny than that of complaints drafted by attorneys. Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980). Courts may "intuit the correct cause of action, even if [the complaint] was imperfectly pled," provided the complaint contains sufficient facts to do so. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). However, while pro se litigants are afforded more latitude in this realm, this latitude "cannot be taken to mean that pro se complaints are held to no standard at all." Sergentakis v. Channell, 272 F. Supp. 3d 221, 224-25 (D. Mass. 2017) (internal

quotation marks and citation omitted). In other words, "pro se status does not insulate a party from complying with procedural and substantive law." Ahmed, 118 F.3d at 890.

### III.  DISCUSSION

As in Martillo, the Defendant is immune from all claims alleged by Affleck under the CDA. The CDA provides in relevant part: "No provider or user of an interactive computer service shall be held liable on account of . . . any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2). This provision "'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content.'" Green v. America Online (AOL), 318 F.3d 465, 471 (3d Cir. 2003) (quoting Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir.1997)).

"[C]ourts that have addressed these issues have generally interpreted Section 230 immunity broadly, so as to effectuate Congress's 'policy choice . . . not to deter harmful online speech through the . . . route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.'" Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007) (quoting Zeran, 129 F.3d at 330-31). Instead Congress' goal "was to encourage service providers to self-regulate the dissemination of offensive material over their services." Zeran, 129 F.3d at 331. Thus, Section 230 "allows website operators to engage in blocking and screening of third-party content, free from liability for such good-faith efforts." Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 18 (1st Cir. 2016).

Under Section 230(c)(1), the Crimson is shielded from liability if: (1) the Crimson is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider, and (3) the claim would treat the Crimson as the publisher or speaker of that information.  The First Circuit has made clear, "(1) web site operators . . . are 'provider[s] . . . of an interactive computer service'; (2) message board postings do not cease to be 'information provided by another information content provider' merely because the 'construct and operation' of the web site might have some influence on the content of the postings; and (3) immunity . . . cover[s] any claim that would treat [the website] 'as the publisher.'" Lycos, 478 F.3d at 419.

With this backdrop, as in Martillo in which this Plaintiff made nearly identical claims against the Crimson, among others, the deletion of content posted by Affleck and the disabling of his account are well within the Crimson's traditional editorial functions protected by the CDA. See, e.g., Duffer, 701 F. Supp. 3d at 88 (holding a website that hosts user comments immune, under the CDA, as "removal of content is a traditional editorial function"); Spreadbury v. Bitterroot Pub. Libr., 856 F. Supp. 2d 1195, 1198 (D. Mont. 2012) (holding that CDA immunity applies to comment sections on newspaper websites); Collins v. Purdue Univ., 703 F. Supp. 2d 862, 878-80 (N.D. Ind. 2010) (holding that a newspaper cannot be held liable for the publication of comments posted by third parties on its website); Miles v. Raycom Media, Inc., No. 09-CV-713-LG-RHW, 2010 WL 3419438, at *3 (S.D. Miss. Aug. 26, 2010) (holding "that the defendants are immune from liability for the allegedly defamatory third-party comments published on its website"); see also, e.g., Sikhs for Justice, Inc. v. Facebook, 697 Fed. App'x 526, 526 (9th Cir. 2017) (holding that, under the CDA, Facebook was immune from claim that it had wrongly blocked the plaintiff's online content); Langdon v. Google, Inc., 474 F. Supp. 2d,

6

622, 631 (D. Del. 2007) (holding that the CDA "provides Google, Yahoo, and Microsoft immunity for their editorial decisions regarding screening and deletion [of the plaintiff's advertisements] from their network") (footnote omitted).  As Section 230's barrier to suit is evident from the face of Affleck's complaint, regardless of the content of his posts, the Crimson is immune from Affleck's state and federal constitutional claims, as well as claims under federal law. See Duffer, 701 F. Supp. 3d at 89 (citing Nat'l Ass'n of the Deaf, 377 F. Supp. 3d at 68).

Finally, the CDA provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3).  Section 230 expressly preempts state law claims that do not fall within the narrow exceptions identified in Section 230(e).  None of those enumerated exceptions applies in this case.  As a result, the Crimson is also immune from Affleck's state common carriage and public accommodation discrimination claims.  Further, even if the Crimson was not immune, Affleck has failed to state a claim, as the Crimson is "not [a] common carrier[] of 'merchandise or other property'" and is "not [a] place[] of 'public accommodation,'" just as the court found in Martillo. 2021 WL 8999587 at *1, *2.

Because this Court finds that Section 230(c)(1) requires dismissal of all of Affleck's claims, it declines to consider the Crimson's arguments regarding the application of the First Amendment or Affleck's failure to state a viable claim under state or federal law.

7

## IV.     CONCLUSION

For the foregoing reasons, the Crimson's Motion to Dismiss for Failure to State a Claim [Dkt. 11] is **GRANTED** and the action is **DISMISSED.**

    **SO ORDERED.**

Dated: January 29, 2025                                            /s/ Angel Kelley
                                                                                                            Hon. Angel Kelley
                                                                                                            United States District Judge